IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**DONALD FELIX WINNETT**                                                                                              **PLAINTIFF**
**ADC #139544**

V.                                   NO. 4:23-cv-00672-BRW-ERE

**MATTHEW R. WINSTON,** *et al.*                                                                            **DEFENDANTS**

## RECOMMENDED DISPOSITION

**I.     Procedures for Filing Objections:**

This Recommendation has been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation.  Any objections filed must: (1) specifically explain the factual and/or legal basis for the objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not object, you risk waiving the right to appeal questions of fact and Judge Wilson can adopt this Recommendation without independently reviewing the record.

**II.    Background:**

On July 20, 2023, *pro se* plaintiff Donald Felix Winnett, an Arkansas Division of Correction ("ADC") inmate, filed this civil rights lawsuit under 42 U.S.C. § 1983. *Doc. 2.* In his original complaint, he alleged that: (1) Defendants Winston, Bolden, and Payne failed to properly respond to his grievances; (2) Defendant Evens wrongfully convicted him of a disciplinary charge; and (3) Defendants Walker and

Cobbs failed to provide him access to his C-Pap machine while he was housed in isolation.

On July 24, 2023, the Court explained to Mr. Winnett why his original complaint was deficient and gave him an opportunity to file an amended complaint. *Doc. 4*.

On August 1, 2023, Mr. Winnett filed an amended complaint (*Doc. 7*), alleging that during his two-day stay in isolation, Defendants Walker and Cobbs refused to provide him an extension cord for his C-Pap machine, leaving him "gasping air." *Doc. 7 at 6*. On screening, the Court determined that Mr. Winnett stated medical deliberate indifference claims against Defendants Walker and Cobbs and issued service for those Defendants.[1] *Doc. 10*.

On October 23, 2023, Defendants filed a motion for summary judgment, statement of undisputed facts, and supporting brief asserting that Mr. Winnett failed to fully exhaust his administrative remedies before filing this lawsuit. *Docs. 65, 66, 67*. Mr. Winnett has responded to Defendants' motion (*Docs. 73, 87, 96, 99, 106, 116*), and the motion is ripe for review.

For the reasons stated below, Defendants' motion for summary judgment should be granted.

---

[1] The Court dismissed Mr. Winnett's claims against Defendants Winston, Evens, Bolden, Payne, and Roberts. *Docs. 15, 54*.

## III.    Discussion:

### A.    The PLRA Makes Exhaustion Mandatory

The Prison Litigation Reform Act ("PLRA") requires the Court to dismiss any claim raised that was not fully exhausted prior to filing a civil lawsuit under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining the proper exhaustion of remedies "means using all steps that the [prison] holds out, and doing so properly"); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (holding an inmate must exhaust all available administrative remedies before filing suit, and "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory").

Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Thus, the PLRA required Mr. Winnett to satisfy the ADC's requirements for raising and exhausting the claims he is asserting in this lawsuit before bringing this action.[2]

---

[2] There are exceptions to the exhaustion requirement, but they are few and narrow in scope. For example, an inmate's subjective belief about the futility of the exhaustion process or his misunderstanding about the process are irrelevant in determining whether administrative procedures are available. *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).

## B.     The ADC's Exhaustion Policy

At all times relevant to this action, the ADC provided a three-step administrative grievance process through ADC Administrative Directive 19-34. *Doc. 65-2*. The written policy advises inmates they must exhaust their administrative remedies at all levels before filing a § 1983 lawsuit. *Id. at 19*.

To fully and properly exhaust administrative remedies, an ADC prisoner must file: (1) a "Step One" informal resolution raising the claim with the designated unit-level problem-solver within fifteen calendar days of the incident; (2) a "Step Two" formal unit-level grievance raising that claim with the Warden within three business days of the denial of the informal resolution; and (3) an appeal to the appropriate ADC Chief Deputy/Deputy/Assistant Director within five working days of the Warden's decision. *Id. at 6-14*. The grievance process ends when the appropriate Chief Deputy/Deputy/Assistant Director renders a written decision or rejects an appeal. *Id. at 14*.

 Thus, to properly exhaust his administrative remedies with respect to his claims against Defendants, Mr. Winnett was required to present the claims in a timely filed grievance and go through all three steps of the ADC's grievance process before initiating this lawsuit. See *Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out and doing

so *properly* (so that the agency addresses the issues on the merits)") (emphasis in original).

### C. Mr. Winnett's Grievance History

Defendants submit the affidavit of Terri Grigsby Brown, the ADC Inmate Grievance Supervisor. *Doc. 65-1*. Ms. Brown states that she reviewed Mr. Winnett's grievance history and found three grievances that either pertain to the claims he pursues in this lawsuit or mention Defendant Walker or Cobbs: (1) PB-23-119; (2) PB-23-140; and (3) PB-23-141. *Doc. 65-1 at 7*. Based on the history of these grievances, chronicled below, Ms. Brown reports that Mr. Winnett failed to exhaust any one of these grievances through all three steps of the ADC's inmate grievance procedure. *Id. at 8*.

On March 29, 2023, Mr. Winnett filed grievance PB-23-119, stating that he went to the "hole" (6 barracks) on March 28, 2023, and Defendant Cobbs ignored his request for an extension cord for his C-Pap machine. *Doc. 65-3 at 3*. In a decision dated April 28, 2023, Warden Clark found that grievance PB-23-119 was without merit because Defendant Cobbs had provided Mr. Winnett an extension cord during his two-day stay in 6 barracks. *Id. at 4*. Mr. Winnett appealed the Warden's decision to the Deputy Director, who rejected the appeal because Mr. Winnett failed to sign, date, or include his ADC number on the appeal form, as required by the ADC inmate

grievance policy.³ *Id. at 5*. Accordingly, Mr. Winnett failed to fully exhaust the claims raised in grievance PB-23-119.

On April 18, 2023, Mr. Winnett filed grievance PB-23-140, complaining that on March 28, 2023, Defendants Walker and Cobbs ignored his requests for an extension cord for his C-Pap machine. *Doc. 65-4 at 3*. *Id*. Because Mr. Winnett failed to file the grievance within 15 days from the incident, ADC inmate grievance coordinator Sandra Redwood rejected grievance PB-23-140 as untimely. *Doc. 65-4 at 4*. Therefore, Mr. Winnett failed to fully exhaust the claims raised in PB-23-140.

On April 18, 2023, Mr. Winnett filed grievance PB-23-141, complaining that he had not received his "Acknowledgement of Unit Level grievance" for his March 29, 2023 grievance (PB-23-229) or his April 3, 2023 grievance. *Id*. Mr. Winnett's grievance PB-23-141 raised a grievance processing claim and did not mention the substance of the deliberate indifference claims that he pursues in this lawsuit. Even assuming grievance PB-23-141 is somehow relevant to whether Mr. Winnett exhausted his administrative remedies in this case, it was rejected because Mr. Winnett failed to include the Warden's decision with his appeal. *Id. at 5*.

---

³ ADC policy required Mr. Winnett to appeal the Warden's decision using a space provided on Attachment III, the form setting forth the Warden's decision. *Doc. 65-2 at 12*. Mr. Winnett states that he could not have signed his appeal of the Warden's decision because he never received Attachment III. *Doc. 2 at 68*. However, a copy of the ADC form acknowledging receipt of Mr. Winnett's appeal on May 9, 2023 indicates that he submitted his appeal using Attachment III but failed to "complete Attachment III . . . by signing [his] name, ADC#, and/or the date." *Doc. 65-3 at 5*.

Mr. Winnett offers no evidence to rebut Defendants' evidentiary showing that he failed to fully exhaust his administrative remedies regarding his claims against them. Instead, he repeatedly argues that ADC officials failed to provide him timely acknowledgement that his grievances had been received. *Doc. 73 at 2; Doc. 87 at 1-2; Doc. 96 at 1-2; Doc. 99 at 1; Doc. 106 at 2-9; Doc. 116 at 2-3*. However, the grievances relevant to Mr. Winnett's present claims were denied for reasons having nothing to do with whether he received timely acknowledgment of his grievances.

Thus, on this record, there is no genuine issue of material fact regarding Mr. Winnett's failure to exhaust his administrative remedies, and Defendants are entitled to judgment as a matter of law.

## IV. Conclusion:

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion for summary judgment (*Doc. 65*) be GRANTED.

2. Mr. Winnett's claims be DISMISSED, without prejudice, based on his failure to fully exhaust his administrative remedies.

3. The Clerk be instructed to close this case.

Dated 1 December 2023.

_____
UNITED STATES MAGISTRATE JUDGE